IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| FLIPSIDE WALLETS LLC, | |
| --- | --- |
| *Plaintiff,* | CIVIL ACTION |
| v. | NO. 19-5356 |
| THE BRAFMAN GROUP INC., et al., | |
| *Defendants.* | |

**PAPPERT, J.** March 19, 2020

**MEMORANDUM**

Flipside Wallets LLC sells wallets using its "FLIPSIDE" and "FLIPSIDE and Design" trademarks. After discovering that a competitor, The Brafman Group Inc., was also selling wallets using Flipside's registered trademarks, Flipside sued Brafman for trademark infringement and unfair competition. Brafman filed a Motion to Dismiss for lack of personal jurisdiction. For the reasons that follow, the Court grants the Motion and transfers the case to the U.S. District Court for the District of New Jersey.

I

Flipside sells "high quality RFID shielding wallets" using the trademarks FLIPSIDE and FLIPSIDE and Design, which have been registered with the U.S. Patent and Trademark Office since 2014. (Compl. ¶¶ 2–3, ECF No. 1.) Flipside alleges that one of its competitors, Brafman, also sells RFID-blocking wallets using its FLIPSIDE trademark on Amazon through the Amazon Marketplace program. (*Id.* ¶¶ 6–7.) Brafman is a New Jersey corporation with its principal place of business in West Orange, New Jersey. (*Id.* ¶ 28.) The company does not operate in Pennsylvania and it maintains no offices or other property in the Commonwealth. *See* (Declaration of

1

Nechemia Brafman ("Brafman Decl.") ¶¶ 7–14, Ex. 2, ECF No. 7.) Rather, Brafman conducts all operations from New Jersey and sells its products through third-party websites. (*Id.* ¶ 6.) In 2019, Brafman sold seven Duramont wallets through Amazon to Pennsylvania residents, yielding approximately $280 in revenue. (*Id.* ¶¶ 16–17.) According to Brafman's president, the seven wallets accounted for 0.47% of Brafman's Duramont wallet sales in 2019. (*Id.* ¶ 19.)

## II

In reviewing a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of proving, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction over the defendants by producing sworn affidavits or other competent evidence. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). When the district court does not hold an evidentiary hearing, the plaintiff need only demonstrate a *prima facie* case of personal jurisdiction. *Metcalfe*, 566 F.3d at 330 (citing *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007)). To establish a *prima facie* claim, a plaintiff must show "with reasonable particularity sufficient contacts between the defendant and the forum state." *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992) (quoting *Provident Nat. Bank v. Cal. Fed. Sav. & Loan Assoc.*, 819 F.2d 434 (3d Cir. 1987)). In deciding a Rule 12(b)(2) motion, the court must accept the plaintiff's allegations as true and resolve all doubts in its favor. *Pinker*, 292 F.3d at 368. If the plaintiff succeeds, the burden then shifts to the defendant to demonstrate that the court's exercise of personal jurisdiction would offend traditional notions of fair play and

2

substantial justice. *See Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004).

III

A district court generally exercises personal jurisdiction according to the law of the state where it sits. *See O'Connor*, 496 F.3d at 316. Pennsylvania's long-arm statute permits a court to exercise personal jurisdiction "to the fullest extent allowed under the Constitution of the United States and . . . based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. Cons. Stat. § 5322(b). To determine whether personal jurisdiction exists, the court asks whether, under the Due Process Clause, the defendant has "certain minimum contacts with . . . [Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *O'Connor*, 496 F.3d at 316–17 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Personal jurisdiction can exist in one of two forms: general or specific. *Id.* at 317 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 & n.9 (1984)). A corporate defendant is subject to a court's general jurisdiction in the state(s) of its incorporation and principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). A court may also assert general jurisdiction over foreign and sister-state corporations when their "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011). The defendant's contacts need not relate to the subject matter of the case, but the facts required to establish general jurisdiction must be extensive and persuasive. *Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587, 589 (3d Cir. 1982).

3

The second type of jurisdiction—specific jurisdiction—exists when a "non-resident defendant has 'purposefully directed' his activities at a resident of the forum and the injury arises from or is related to those activities." *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Specific jurisdiction requires the court to conduct a three-part inquiry. *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009). The court must first determine whether the defendant has purposefully availed its activities to the forum state. *Id.* Next, "the litigation must 'arise out of or relate to' at least one of those activities." *Id.* (quoting *Helicopteros*, 466 U.S. at 414.) The defendant need not be physically located within the state while committing the alleged acts, *Burger King*, 471 U.S. at 476, and a single act may satisfy minimum contacts if it creates a substantial connection to the forum state. *Id.* at 476 n.18. If the first two elements are met, the court then determines whether the defendant's contacts with Pennsylvania are of such that the maintenance of the action "does not offend traditional notions of fair play and substantial justice." *D'Jamoos*, 566 F.3d at 102 (quoting *Burger King*, 471 U.S. at 476).

IV

Brafman argues that Flipside has failed to demonstrate that either specific or general jurisdiction exists over Brafman. *See generally* (Def.'s Mot. to Dismiss, ECF No. 7). In response, Flipside contends that sale of seven Duramont wallets through Amazon is sufficient to establish specific jurisdiction. (Pl.'s Response 3, ECF No. 8.) In the alternative, Flipside requests that the Court allow it to conduct limited jurisdictional discovery into "Brafman's ongoing general contacts with Pennsylvania" to establish general jurisdiction. (*Id.* at 6.) The Court addresses each argument in turn.

4

A

Flipside argues that specific jurisdiction exists on the basis that Brafman "has permitted Amazon to repeatedly fulfill orders for Brafman's wallets by Pennsylvania residents." (Response 3.) Brafman acknowledges that in 2019, it sold seven Duramont wallets to Pennsylvania residents through Amazon, which generated $280. (Brafman Decl. ¶ 16.) According to Flipside, these Amazon sales are "ample evidence" of the type of intentional interaction with Pennsylvania sufficient to establish specific jurisdiction. (Response 3.) The Court disagrees.

In the context of online commercial activity, *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), has become a "seminal authority" regarding personal jurisdiction. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 (3d Cir. 2003). In *Zippo*, the court explained that the likelihood of exercising personal jurisdiction is based on a sliding scale approach. 952 F. Supp. at 1124. Where a defendant "clearly does business over the Internet" in the forum state and where the claim arises out of the use of the defendant's website, the court held that personal jurisdiction exists. *Toys "R" Us*, 318 F. 3d at 452 (citing *Zippo*, 952 F. Supp. at 1124). On the opposite side of the scale are situations in which the defendant simply posted information on a website accessible to users. *Zippo*, 952 F. Supp. at 1124. According to *Zippo*, such passive sites are not grounds for the exercise of personal jurisdiction. *Id.* The operation of a commercially interactive website, however, is not alone sufficient to establish personal jurisdiction. Rather, as the Third Circuit's controlling standard articulates, "there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its web site to the state,

knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts." *Toys "R" Us*, 318 F.3d at 454.

Although the use of the third-party website Amazon places Brafman's actions on the more interactive side of *Zippo*'s sliding scale, Flipside still fails to meet its burden of showing that Brafman made purposeful contact with Pennsylvania. Brafman does not operate its own website; rather, Amazon handles all transactions. *See* (Declaration of Michael Kitchen ("Kitchen Decl.") ¶ 10, Ex. G, ECF No. 8.) Indeed, the Amazon Seller Profile indicates that all Brafman orders have been completed by Amazon; no orders have been fulfilled or shipped directly by Brafman to Pennsylvania residents. (*Id.*) While businesses like Brafman surely benefit from the nationwide market reach of Amazon, Brafman's use of a third-party website to facilitate sales does not satisfy the "purposeful availment" standard as required by *Toys "R" Us*. *See, e.g.*, *Guidecraft, Inc. v. OJCommerce, LLC*, 2019 WL 2373440 (W.D. Pa. May 20, 2019) (explaining that businesses using Amazon "glean customers thousands of miles away" but that "such reach does not meet the definition of 'purposeful availment'"), *adopted by* 2019 WL 2371645 (W.D. Pa. June 5, 2019).

Even if Brafman knew or should have known that its wallets would end up in Pennsylvania though Amazon sales, that expectation is insufficient to establish specific jurisdiction. Such an argument relies on the stream-of-commerce theory, which contends that specific jurisdiction exists when a defendant "has injected its goods into the forum state indirectly via the so-called stream of commerce," making it foreseeable that one of the defendant's goods will end up in the forum state. *D'Jamoos*, 566 F.3d at 104–05 (citations omitted). A plurality of the Supreme Court has twice rejected the

stream-of-commerce theory.  *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 780 (3d Cir. 2018) (citing *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 877–85 (2011) (plurality opinion); *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 108–13 (1987) (plurality opinion)).  Because "it is the defendant's actions, not [its] expectations, that empower a State's courts to subject him to judgment," it is not enough that Brafman might have predicted its wallets would reach Pennsylvania.  *J. McIntyre*, 564 U.S. 873 at 882–883.[1]

B

Flipside does not argue that general jurisdiction exists over Brafman, but rather seeks a court order permitting it to conduct limited jurisdictional discovery to establish general jurisdiction.  (Response 5–6.)  When "a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state,' the plaintiff's right to conduct jurisdictional discovery should be sustained."  *Toys "R" Us*, 318 F.3d at 456 (quoting *Mellon Bank*, 960 F.2d at 1223).  A request for discovery will be denied only if the claim of jurisdiction is "clearly frivolous."  *Toys "R" Us*, 318 F.3d at 456.

Flipside alleges that Brafman sells a variety of goods on Amazon beyond just wallets, such as office chairs, but that the quantity of office chairs sold is unknown.  (Response 6.)  According to Flipside, in the last thirty days Amazon has shipped over 1000 orders for Brafman products, and "[a]ssuming the same proportion of office chair sales are being sent to Pennsylvania customers as wallet sales . . . five chairs have been shipped to Pennsylvania residents over the past 30 days and by extrapolation sixty over

---

[1] Because Brafman did not purposefully avail itself to Pennsylvania, the Court need not proceed to parts two and three of the specific jurisdiction analysis.  *See D'Jamoos*, 566 F.3d at 106.

7

the past year." (*Id.*)  Flipside contends these sixty contacts, if they exist, are so extensive and continuous to support Pennsylvania having general jurisdiction over Brafman.

Because Brafman is incorporated and maintains its principal place of business in New Jersey, Pennsylvania could only exercise general jurisdiction in the "exceptional case" where Brafman's contacts "with the State are so 'continuous and systematic' as to render it essentially at home in the forum state." *Daimler*, 57 U.S. at 139 & n.19 (quoting *Goodyear*, 564 U.S. at 919).  Even if Flipside's proposed discovery confirmed that Brafman sold sixty chairs via Amazon to Pennsylvania residents, that fact falls well below the demanding threshold established in *Daimler*.  *See Campbell v. Fast Retailing USA, Inc.*, 2015 WL 9302847, at *3 (E.D. Pa. Dec. 22, 2015) ("The allegation that an entity transacts business, even substantial business, in Pennsylvania is insufficient to establish that it is essentially 'at home' in Pennsylvania.").  Because the request for jurisdictional discovery would be futile, the Court denies it.  *See Barth v. Walt Disney Parks & Resorts U.S., Inc.*, 697 F. App'x 119, 120 (3d Cir. 2017) (unpublished) (affirming denial of request where "jurisdictional discovery would have been futile").

V

If a district court lacks jurisdiction over a matter, "the court shall, if it is in the interest of justice, transfer such action . . . to any other such court" where the action could have been brought at the time it was filed.  28 U.S.C. § 1631.  Transfer under this section is appropriate where (1) the court lacks jurisdiction, (2) transfer is in the interest of justice, and (3) the action could have been brought in the transferee court at

8

the time it was filed in this Court.  Flipside did not request the case to be transferred if the Court found personal jurisdiction lacking, but the Court *sua sponte* transfers this matter under § 1631.  *See Island Insteel Sys., Inc. v. Waters*, 296 F.3d 200, 412 n.9 (3d Cir. 2002) (allowing *sua sponte* transfers under § 1631).

Having determined that the Court lacks personal jurisdiction over Brafman, it is in the interest of justice to transfer the case to the District of New Jersey.  Sound judicial administration counsels that cases should be transferred to districts where jurisdiction exists and venue is proper.  *Lawman Armor Corp. v. Simon*, 319 F. Supp. 2d 499, 507 (E.D. Pa. 2004).  Courts in New Jersey may exercise general jurisdiction over Brafman because the company is a New Jersey corporation with its principal place of business in West Orange, New Jersey.  (Compl. ¶ 28.)  For those same reasons, venue is also proper in the District of New Jersey.  *See* 28 U.S.C. § 1391(b).  The interest of justice is further advanced by transferring the case because the alternative—*i.e.*, dismissing the case and requiring Flipside to refile elsewhere—would be time-consuming and undermine the efficient administration of justice.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.